EX. B

| | |
|---|---|
| 1. Date of Agreement<br>NOVEMBER 01, 2004 | **STANDARD SHIP MANAGEMENT AGREEMENT**<br><br>**PART I** |
| 2. a. Name of Vessel (the "Vessel"):<br>MT "ALLORO" EX SOEI<br><br>Flag: VENEZUELA | |
| 3. Owners (name and place of registered office (Cl.1))<br><br>SURAMERICANA DE TRANSPORTE PETROLERO, C.A.<br>Name<br>AVENIDA FRANCISCO DE MIRANDA,<br>EDIFICIO PARQUE CRISTAL,<br>TORRE OESTE PISO 2, OFFICINA 2-1<br>LOS PALOS GRANDES, CARACAS 1060<br>VENEZUELA<br><br>Place of registered office<br>**Caracas, Venezuela** | 4. Managers (name and place of registered office (Cl.1))<br><br>**Novoship (UK) Ltd.**<br>Name<br>**Watergate House<br>13-15 York Buildings<br>London<br>WC2N 6JU**<br><br>Place of registered office<br>**London, England** |
| 5. Day and year of commencement of Agreement (Cl.2)<br><br>ON OR AROUND 30th NOVEMBER, 2004 | 6. Crew management (state "yes" or "no" as agreed) (Cl.3.1)<br>YES |
| 7. Technical Management (state "yes" or "no" as agreed) (Cl.3.2)<br>YES | 8. Commercial Management (state "yes" or "no" as agreed) (Cl.3.3)<br>NO<br><br>Agreed commission          % flat on all hires and freights |
| 9. Insurance Arrangements (state "yes" or "no" as agreed) (Cl.3.4(i))<br>YES<br>Agreed commission 0% flat on all gross premium.  Agreed collecting<br>Commission 5% flat of the amount of insurance claim agreed by<br>Underwriter (Cl.3.4(ii)) | 10. Accounting Services (state "yes" or "no" as agreed) (Cl.3.5)<br><br>YES |
| 11. Sale or purchase of the Vessel (state "yes" or "no" as agreed) (Cl.3.6)<br><br>NO<br><br>Agreed commission          % flat on price of Vessel | 12. Provisions (state "yes" or "no" as agreed) (Cl.3.7)<br><br>YES |
| 13. Bunkering (state "yes" or "no" as agreed) (Cl.3.8)<br><br>NO<br><br>Agreed commission____ flat on all bunkers purchased | 14. Chartering Services Period (only to be filled in if "yes" stated in Box 7)<br>(Cl.3.3(i))<br>NO |
| 15. Owners' Insurance (state alternative (i), (ii) or (iii) of Cl.6.3)<br><br>(ii) | 16. Annual Management Fee (state annual amount) (Cl.8.1)<br><br>US$ 140,000 PER ANNUM |
| 17. Severance Costs (state maximum amount) (Cl.8.4(ii))<br>EQUIVALENT TO THREE (3) MONTHS SALARY INCLUDING<br>OVERTIME, VACATION PAY AND OTHER GUARANTEED<br>PAYMENTS | 18. Advance Deposit (state "yes" or "no" as agreed) (Cl.10.1)<br>YES<br>If "yes" state amount of Advance Deposit: USD 75,000.- |
| 19. Day and year of termination of Agreement (Cl.18)<br><br>31st DECEMBER 2005 | 20. Law and Arbitration (Cl.20)<br>ENGLISH LAW<br>LONDON ARBITRATION |
| 21. Notices (state postal address, telephone and telefax number for serving<br>notice and communication to the Owners) (Cl.21)<br><br>PARQUE CRISTAL, TORRE ESTE, PISO 13<br>OFIC. 13-10, AV. FRANCISCO DE MIRANDEA<br>LOS PALOS GRANDES, CARACAS<br>TEL: +58 212 216 0550<br>FAX: +58 212 216 0549 | 22. Notices (state postal address, telephone and telefax number for serving<br>notice and communication to the Managers) (Cl.21)<br><br>WATERGATE HOUSE<br>13-15 YORK BUILDINGS<br>LONDON WC2N 6JU<br>TEL: +44 (0)20 7747 9100<br>FAX: +44 (0)20 7747 9000 |

It is mutually agreed between the party stated in Box 3 and the party stated in Box 4 that this Agreement consisting of PART I and PART II as well as Annexes "A" (Details of Vessel), "B" (Details of Crew), "C" (Budget) , "D" (Associated Vessels) and "E" (Additional Clauses) attached hereto, shall be performed subject to the conditions contained herein.  In the event of a conflict of conditions, the provisions of PART I and Annexes "A", "B", "C", "D" and "E" shall prevail over those of PART II to the extent of such conflict but no further.

| | |
|---|---|
| Signature(s) (Owners)<br><br><br>PRINT NAME:<br>SHIPMAN/1/0699/REV01 | Signature(s) (Managers)<br><br><br>PRINT NAME:  VLADIMIR  MIKHAYLYUK |

*Ex. B*

# PART II
## Ship Management Agreement

**1.   Definitions**
In this Agreement save where the context otherwise requires, the
following words and expressions shall have the meanings hereby
assigned to them.

*"Owners"* means the party identified in Box 3.
*"Managers"* means the party identified in Box 4.
*"Vessel"* means the vessel or vessels details of which are set out
in Annex "A" attached hereto.
*"Crew"* means the Master, officers and ratings of the Vessel
and nationality specified in Annex "B" attached hereto.
*"Crew Support Costs"* means all expense of a general nature which
are incurred by the Managers for the purpose of providing an
efficient and economic management service and, without prejudice
to the generality of the foregoing, shall include the cost of medicals,
crew standby pay, training schemes for officers and ratings, cadet
training schemes, sick pay, study pay, recruitment and interviews.
*"Severance Costs"* means the costs which the Managers are
legally obliged to pay to or in respect of the Crew as a result of
the early termination of any employment contract for service on
the Vessel.
*"Crew Insurances"* means insurances against crew risks which
shall include but not be limited to death, sickness, repatriation,
injury, shipwreck unemployment indemnity and loss of personal
effects.
*"Management Services"* means the services specified in sub-
clauses 3.1 to 3.8 as indicated affirmatively in Boxes 6 to 15.
*"ISM Code"* means the International Management Code for the Safe
Operation of Ships and for Pollution Prevention as adopted by the
International Maritime Organization (IMO) by resolution A.741(18)
any subsequent amendment thereto.
*"STCW 95"* means the International Convention on Standards
of Training, Certification and Watchkeeping for Seafarers, 1978,
as amended in 1995 or any subsequent amendment thereto.

**2.   Appointment of Managers**
With effect from the day and year stated in Box 5 and continuing
unless and until terminated as provided herein, the Owners hereby
appoint the Managers and the Managers hereby agree to act as
the Managers of the Vessel.

**3.   Basis of Agreement**
Subject to the terms and conditions herein provided, during the
period of this Agreement, the Managers shall carry out
Management Services in respect of the Vessel as agents for and on
behalf of the Owners. The Managers shall have authority to
take such actions as they may from time to time in their absolute
discretion consider to be necessary to enable them to perform
this Agreement in accordance with sound ship management
practice.
**3.1 (a) Crew Management**
*(only applicable if agreed according to Box 6)*
The Managers shall provide suitably qualified Crew for the Vessel
as required by the Owners in accordance with the STCW 95
requirements, provision of which includes but is not limited to the
following functions:
(i)      Selecting and engaging the Vessel's Crew, including
         payroll arrangements, pension administration, and
         insurances for the Crew other than those mentioned in
         Clause 6;
(ii)     Ensuring that the applicable requirements of the law of
         the flag of the Vessel are satisfied in respect of manning
         levels, rank, qualification and certification of the Crew
         and employment regulations including Crew's tax, social
         insurance, discipline and other requirements.
(iii)    ensuring that all members of the Crew have passed a
         medical examination with a qualified doctor certifying that
         they are fit for the duties for which they are engaged and
         are in possession of valid medical certificates issued in
         accordance with appropriate flag State requirements. In
         the absence of applicable flag State requirements the
         medical certificate shall be dated not more than three
         months prior to the respective Crew members leaving
         their country of domicile and maintained for the duration
         of their service on board the Vessel;
(iv)     arranging transportation of the Crew including repatriation
(v)      training of the Crew and supervising their efficiency;
(vi)     conducting union negotiations;
(vii)    implementing the Managers' drug and alcohol policy
         unless otherwise agreed.

**3.1(b)**
The Owners may upon reasonable notice request the Managers to
transfer and/or replace any personnel. The Managers will comply
with the Owner's request at the first practical opportunity. The
Managers may transfer or replace any personnel at its exclusive
discretion, always considering minimal costs for the Owners. The
Managers shall be subrogated to all rights of the crew against the
Vessel and the Owners for all wages, travel related expenses and
other employment benefits paid by the Managers.
**3.2   Technical Management**
*(only applicable if agreed according to Box 7)*
The Managers shall provide technical management which
includes, but is not limited to, the following functions:
(i)      provision of competent personnel to supervise the
         maintenance and general efficiency of the Vessel;
(ii)     arrangement and supervision of dry dockings, repairs,
         alterations and the upkeep of the Vessel to the standards

required by the Owners provided that the Managers
shall be entitled to incur the necessary expenditure to
ensure that the Vessel will comply with the law of the
flag of the Vessel and of the places where the
trades, and all requirements and recommendations of
the classification society;
(iii)    arrangement of the supply of necessary stores, spares
         and lubrication oil;
(iv)     appointment of surveyors and technical consultants as
         the Managers may consider from time to time to be
         necessary;
(v)      development, implementation and maintenance of an
         onboard Safety Management System (SMS) in
         accordance with the ISM Code (see sub-clauses 4.2
         and 5.3).
**3.3   Commercial Management**
*(only applicable if agreed according to Box 8)*
The Managers shall provide the commercial operation of the
Vessel, as required by the Owners, which includes, but is not
limited to, the following functions:
(i)      providing chartering services in accordance with the
         Owners' instructions which include, but are not limited
         to, seeking and negotiating employment for the Vessel
         and the conclusion (including the execution thereof) of
         charter parties or other contracts relating to the
         employment of the Vessel. If such a contract exceeds the
         period stated in Box 14, consent thereto in writing shall
         first be obtained from the Owners;
(ii)     arranging of the proper payment to Owners or their
         nominees of all hire and/or freight revenues or other
         moneys of whatsoever nature to which Owners may be
         entitled arising out of the employment or otherwise in
         connection with the Vessel;
(iii)    providing voyage estimates and accounts and
         calculations of hire, freights, demurrage and/or dispatch
         moneys due from or due to the charterers of the Vessel;
(iv)     issuing of vessel instructions;
(v)      appointing agents;
(vi)     appointing stevedores;
(vii)    arranging surveys associated with the commercial
         operation of the vessel.
**3.4   Insurance Arrangements**
*(only applicable if agreed according to Box 9)*
The Managers shall:
(i)      arrange insurances in accordance with Clause 6, on such
         terms and conditions as the Owners shall have instructed
         or agreed, in particular regarding conditions, insured
         values, deductibles and franchises;
(ii)     prepare all the insurance average (particular and general)
         salvage and other marine claims in connection to the
         Vessel and will submit a statement of costs and expenses
         to the Owners for review in order for the Managers to
         submit to the underwriters for settlement.
The Managers, at their discretion may appoint average adjuster(s)
and other professional adjusters when such services are
appropriate and whenever possible, in conjunction with the Owner,
who shall not unreasonably delay or withhold its approval to such
appointment.
**3.5   Accounting Services**
*(only applicable if agreed according to Box 10)*
The Managers shall:
(i)      establish an accounting system which meets the
         requirements of the Owners and provide regular
         accounting services, supply regular reports and records,
(ii)     maintain the records of all costs and expenditure
         incurred as well as data necessary or proper for the
         settlement of accounts between the parties.
**3.6   Sale or Purchase of the Vessel**
*(only applicable if agreed according to Box 11)*
The Managers shall in accordance with the Owners' instructions,
supervise the sale or purchase of the Vessel, including the
Performance of any sale or purchase agreement.
**3.7   Provisions** *(only applicable if agreed according to Box 12)*
The Managers shall arrange for the supply of provisions.
**3.8   Bunkering** *(only applicable if agreed according to Box13)*
The Managers shall at Owners' expense arrange for the provision of
bunker fuel of the quality specified by the Owners as required for
the Vessel's trade.

**4.   Managers' Obligations**
**4.1**   The Managers undertake to use their best endeavors to
provide the agreed Management Services as agents for and on
behalf of the Owners in accordance with sound ship management
practice and to protect and promote the interest of the Owners in
all matters relating to the provision of services hereunder.
Provided, however, that the Managers in the performance of their
management responsibilities under this Agreement shall be entitled
to have regard to their overall responsibility in relation to all
vessels as may from time to time be entrusted to their
Management and in particular, but without prejudice to the
generality of the foregoing, the Managers shall be entitled to
allocate available supplies, manpower and services in such manner
as in the prevailing circumstances the Managers in their absolute
discretion consider to be fair and reasonable.
**4.2**   Where the Managers are providing Technical Management in
accordance with sub-clause 3.2, they shall ensure that the
requirements of the law of the flag of the Vessel are satisfied and

*VM*

# PART II
## Ship Management Agreement

they shall in particular be deemed to be the "Company" as defined by the ISM Code, assuming the responsibility for the operation of the Vessel for ISM Code purposes and taking over the duties and responsibilities imposed by the ISM Code when applicable.

**5.    Owners' Obligations**
5.1   The Owners shall pay all sums due to the Managers punctually in accordance with the terms of this Agreement.
5.2   Where the Managers are providing Technical Management in accordance with sub-clause 3.2, the Owners shall:
(i)      ensure that all officers and ratings supplied by them or on their behalf comply with the requirements of STCW 95;
(ii)     instruct such officers and ratings to obey all reasonable orders of the Managers in connection with the operation of the Managers' SMS.
5.3   Where the Managers are not providing Technical Management in accordance with sub-clause 3.2, the Owners shall ensure that the requirements of the law of the flag of the Vessel are satisfied and that they, or such other entity as may be appointed by them and identified to the Managers, shall be deemed to be the "Company" as defined by the ISM Code assuming the responsibility for the operation of the Vessel and taking over the duties and responsibilities imposed by the ISM Code when applicable.

**6.    Insurance Policies**
The Owners shall ensure, whether by instructing the Managers under sub-clause 3.4 or otherwise, that throughout the period of this Agreement:
6.1   at the Owners' expense, the Vessel is insured for not less than f sound market value or entered for her full gross tonnage, as the case may be for:
(i)      usual hull and machinery marine risks (including crew negligence) and excess liabilities on terms equivalent to the Institute Time Clauses – Hull 1.11.95
(ii)     protection and indemnity risks (including pollution risks, diversion expenses and Crew Insurances); and
(iii)    war risks (including protection and indemnity and crew risks).
In accordance with the best practice of a prudent owner of vessels of a similar type to the Vessel, with first class insurance companies, underwriters or associations ("the Owners' Insurances");
6.2   all premiums and calls on the Owners' Insurances are paid promptly by their due date.
6.3   the Owners' Insurances name the Managers and, subject to underwriters' agreement, any third party designated by the Managers as a joint assured, with full cover, with the Owners obtaining cover in respect of each of the insurances specified in sub-clause 6.1
(i)      on terms whereby the Managers and any such third party are liable in respect of premiums or calls arising in connection with the Owners' Insurances; or
(ii)     if reasonably obtainable, on terms such that neither the Managers nor any such third party shall be under any liability in respect of premiums or calls arising in connection with the Owners' Insurances; or
(iii)    on such other terms as may be agreed in writing.
Indicate alternative (i), (ii) or (iii) in Box 15. If Box 15 is left blank then (ii) applies.
6.4   where evidence is provided, to the reasonable satisfaction of the Managers, of the Owner's compliance with their obligations "nder this Clause 6 within a reasonable time of the commencement the Agreement, and of each renewal date and, if specifically requested, of each payment date of the Owners' Premium and/or call for the insurances.

**7.    Income Collected and Expenses Paid on Behalf of Owners**
7.1   All moneys collected by the Managers under the terms of this Agreement (other than moneys payable by the Owners to the Managers) and any interest thereof shall be held to the credit of the Owners in a separate bank account.
7.2   All expenses incurred by the Managers under the terms of this Agreement on behalf of the Owners (including expenses as provided in Clause 8) may be debited against the Owners from the account referred to under sub-clause 7.1 but shall in any event remain payable by the Owners to the Managers on demand.
7.3   It is acknowledged that the Managers furnish the goods and services on the credit of the Vessel and that this Agreement should not be considered as a joint venture between the Managers and the Owners.

**8.    Management Fee**
8.1   The Owners shall pay to the Managers for their services  as Managers under this Agreement an annual management  fee as stated in Box 16 which shall be payable by equal installments monthly in advance, the first installment being payable on the commencement of this Agreement (see Clause 2 and Box 5) and subsequent installments being payable every month. The Management Fee is a net amount payable to the Managers in the London or any other place designated by the Managers without set-off or deduction and shall be payable in the lawful currency of the United States, free and clear of any withholding tax, other taxes, levies, duties, etc.  In the event that any such taxes or levies are enforced which reduce the Management Fee received by the Managers, then the Owners shall promptly pay such additional amounts as are necessary to ensure that the Management Fee received by the Managers is the full Management Fee described

above.
8.2   The Management Fee shall be subject to an annual review on the anniversary date of the Agreement and the proposed fee shall be presented in the annual budget referred to in sub-clause 9.1.
8.3   The Managers shall, at no extra cost to the Owners, provide their own office accommodation, office staff, facilities and stationery. Without limiting the generality of Clause 7 the Owners shall reimburse the Managers for delivery and communication expenses, travelling expenses, and other out of pocket expenses properly incurred by the Managers in pursuance of the Management Services.
8.4   In the event of the appointment of the Managers being terminated by the Owners or the Managers in accordance with the provisions of Clauses 18 and 19 other than by reason of default by the Managers, the "Management Fee" payable to the Managers according to the provisions of sub-clause 8.1, shall continue to be payable for a further period of three calendar months as from the termination date.  In addition, provided that the Managers provide Crew for the Vessel in accordance with sub-clause 3.1
(i)      the Owners shall continue to pay Crew Support Costs during the said further period of three calendar months; and
(ii)     the Owners shall pay an equitable proportion of any Severance Costs which may materialize, not exceeding the amount stated in Box 17.
8.5   If the Owners decide to lay-up the Vessel whilst this Agreement remains in force and such lay-up lasts for more than three months, an appropriate reduction of the Management Fee for the period exceeding three months until one month before the Vessel is again put into service shall be mutually agreed between the parties.
8.6   Unless otherwise agreed in writing all discounts and commissions obtained by the Managers in the course of the management of the Vessel shall be credited to the Owners, except volume discounts earned by the Managers and not directly attributable to the management of the Vessel.
8.7   The Managers shall have a lien on the Vessel and its income for all unpaid expenses associated with the Vessel, including, but not limited to crew costs and related travel expenses, Management Fees, the supply of necessaries, spares, repairs, insurance premium or calls, technical or other services furnished to the Vessel and shall be subrogated to all rights of suppliers from whom supplies are ordered and delivered .to the Vessel in any place(s) around the world.

**9.    Budgets and Management of Funds**
9.1   The Managers shall present to the Owners annually a budget for the following twelve months in such form as the Owners require.  The budget for the first year hereof is set out in Annex "C" hereto.  Subsequent annual budgets shall be prepared by the Managers and submitted to the Owners not less than two months prior to the end of each calendar year.
9.2   The Owners shall indicate to the Managers their acceptance and approval of the annual budget within one month of presentation and in the absence of any such indication the Managers shall be entitled to assume that the Owners have accepted the proposed budget.
9.3   Following the agreement of the budget, the Managers shall prepare and present to the Owners their estimate of the working capital requirement of the Vessel and the Managers shall each month up-date this estimate. Based thereon, the Managers shall each month request the Owners in writing for the funds required to run the Vessel for the ensuing month (the "Funding Request") including the payment of any occasional or extraordinary item of expenditure, such as emergency repair costs, additional insurance premiums, bunkers or provisions. Such funds shall be received by the Managers within ten running days after the receipt by the Owners of the Managers' written Funding Request and shall be held by the Managers to the credit of the Owners in a separate bank account for the Vessel.
9.4   The Managers shall produce a comparison between budgeted and actual expenditure of the Vessel in such form as required by the Owners monthly or at such other intervals as mutually agreed.
9.5   Notwithstanding anything contained herein to the contrary, the Managers shall in no circumstances be required to use or commit their own funds to finance the provision of any of the Management Services.

**10.   Advance Deposit**
10.1   Prior to the commencement of this Agreement the Owners shall place a deposit with the Managers (the Advance Deposit) the amount which shall be agreed between the Managers and the Owners, but in any event, shall not be less than the equivalent of thirty (30) times the budgeted daily operating expenses (as may be amended from time to time) as indicated in the Managers' Budget found in Annex "C" attached hereto.
10.2   In the event of any non-payment by the Owners of any sum due under this Agreement, the Managers are entitled (but not obligated) to apply the Advance Deposit against any such expenses or monies due in which case the Owners shall, upon notice of such application, immediately deposit such additional monies as may be necessary to maintain the Advance Deposit in its agreed amount prior to such application.
10.3   The Owners' obligation to maintain the Advance Deposit in the agreed amount is separate and distinct from the Owners' obligations to make prompt payments when due of all amounts

VM

# PART II
## Ship Management Agreement

due under this Agreement.
10.4 Upon the termination of this Agreement, the Managers shall be entitled (but not obligated) to apply against the Advance Deposit any and all expenses then outstanding, actual, contingent or otherwise. After the application of such expenses and the payment of all outstanding fees and expenses due to the Managers, the Managers shall return to the Owners any remaining balance in the Advance Deposit.

**11. Managers' Right to Sub-Contract**
The Managers shall have the right to sub-contract any of their obligations hereunder, including those mentioned in sub-clause 3.1, without the prior written consent of the Owners. In the event of such a sub-contract the Managers will not be responsible for the negligent act or default of the sub-contractor unless the Managers fail to exercise due care in the appointment and supervision of such sub-contractor.

**12. Responsibilities**
12.1 Force Majeure – Neither the Owners nor the Managers shall be under any liability for any failure to perform any of their obligations hereunder by reason of any cause whatsoever of any nature or kind beyond their reasonable control.
12.2 Liability to Owners – (i) Without prejudice to sub-clause 12.1, the Managers shall be under no liability whatsoever to the Owners for any loss, damage, delay or expense of whatsoever nature, whether direct or indirect, (including but not limited to loss of profit arising out of or in connection with detention of or delay to the Vessel) and howsoever arising in the course of performance of the Management Services UNLESS same is ...ved to have resulted solely from the gross negligence or wilful default of the Managers or their employees, or agent employed by them in connection with the Vessel, in which case (save where loss, damage, delay or expense has resulted from the Managers' personal act or omission committed with the intent to cause same or recklessly and with knowledge that such loss, damage, delay or expense would probably result) the Manager's liability for each incident or series of incidents giving rise to a claim or claims shall never exceed a total of ten times the annual Management Fee payable hereunder.
(ii) Notwithstanding anything that may appear to the contrary in this Agreement, the Managers shall not be liable for any of the actions of the Crew, even if such actions are negligent, grossly negligent or wilful, except only to the extent that they are shown to have resulted from a failure by the Managers to discharge their obligations under sub-clause 3.1, in which case their liability shall be limited in accordance with the terms of this Clause 12.2.
12.3 Indemnity – Except to the extent and solely for the amount therein set out that the Managers would be liable under sub-clause 12.2, the Owners hereby undertake to keep the Managers and their employees, agents and sub-contractors indemnified and to hold them harmless against all actions, proceedings, claims, demands or liabilities whatsoever or howsoever arising which may be brought against them or incurred or suffered by them arising out of or in connection with the performance of the Agreement, and against and in respect of all costs, losses, damages and expenses (including legal costs and expenses on a full indemnity basis) which the Managers may suffer or incur (either directly or indirectly) in the course of the performance of this Agreement.
12.4 "Himalaya" – It is hereby expressly agreed that no employee or agent of the Managers (including every sub-contractor from time to time employed by the Managers) shall in any circumstances whatsoever be under any liability whatsoever to the Owners for any loss, damage or delay of whatsoever kind arising or resulting directly or indirectly from any act, neglect or default on his part while acting in the course of or in connection with his employment and, without prejudice to the generality of the foregoing provisions in this Clause 12, every exemption, limitation, condition and liberty herein contained and every right, exemption from liability, defense and immunity of whatsoever nature applicable to the Managers or to which the Managers are entitled hereunder shall also be available and shall extend to protect every such employee or agent of the Managers and/or such sub-contractors acting as aforesaid and for the purpose of all the foregoing provisions of this Clause 12 the Managers and/or sub-contractors are or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all persons who are or might be their servants or agents from time to time (including sub-contractors as aforesaid) and all such persons shall to this extent be or be deed to be parties to this Agreement.

**13. Documentation**
13.1 Where the Managers are providing Technical Management in accordance with sub-clause 3.2 and/or Crew Management in accordance with sub-clause 3.1, they shall make available, upon Owners' request, all documentation and records related to the Safety Management System (SMS) and/or the Crew which the Owners need in order to demonstrate compliance with the ISM Code and STCW 95 or to defend a claim against a third party.
13.2 All of the Managers' ISM system(s) on board the Vessel are the property of the Managers. These systems include the SMS, software, which may be held in the form of files, binders, forms, circulars, manuals, handbooks, contracts, etc. No copies of the systems shall be taken by the Owners. However if requirements necessitate such systems being copied for or shown to the Owners, in whole or in part, the Owners will not utilize such information for any other purpose than the control of the Vessel while it remains under the Managers' management.

**14. General Administration**
14.1 The Managers shall handle and settle all claims arising out of the Management Services hereunder and keep the Owners informed regarding any incident of which the Managers become aware which gives or may give rise to claims or disputes involving third parties.
14.2 The Managers shall, as instructed by the Owners, bring or defend actions, suits or proceedings in connection with matters entrusted to the Managers according to this Agreement.
14.3 The Managers shall also have power to obtain legal or technical or other outside expert advice in relation to the handling and settlement of claims and disputes or all other matters affecting the interests of the Owners in respect of the Vessel.
14.4 The Owners shall arrange for the provision of any necessary guarantee bond or other security.
14.5 Any costs reasonably incurred by the Managers in carrying out their obligations according to Clause 14 shall be reimbursed by the Owners.
14.6 For a period of twelve (12) months following expiry or termination of this Agreement, neither the Owners nor any of their affiliates or subsidiaries will employ any person who, as an employee of the Managers or any sub-contractor, had participated in the management, superintendence, operation, accounting, crewing or chartering of the Vessel pursuant to this Agreement.

**15. Auditing**
The Managers shall at all times maintain and keep true and correct accounts and shall make the same available for inspection and auditing by the Owners at such time as may be mutually agreed provided that no audit may be requested later than two (2) years after the end of the Managers' fiscal year. On the termination, for whatever reasons, of this Agreement, the Managers shall release to the Owners, if so requested, the originals where possible, or otherwise certified copies, of all such accounts and all documents specifically relating to the Vessel and her operation.

**16. Inspection of Vessel**
The Owners shall have the right at any time after giving reasonable notice to the Managers to inspect the Vessel for any reason they consider necessary.

**17. Compliance with Laws and Regulations**
In relation to the Vessel, the Managers will not do or permit to be done anything which might cause any breach or infringement of the laws and regulations of the Vessel's flag, or of the places where she trades.

**18. Duration of the Agreement**
This Agreement shall come into effect on the day and year stated in Box 5 and shall continue until the date stated in Box 19. Thereafter it shall continue until terminated by either party giving to the other notice in writing, in which event the Agreement shall terminate upon the expiration of a period of three months from the date upon which such notice was given.

**19. Termination**
19.1 Owners' default
(i)    The Managers shall be entitled · to terminate the Agreement with immediate effect by notice in writing if:
       (a) Any monies payable by the Owners under this Agreement and/or by the Owners of any Associated Vessel, details of which are listed in Annex "D", shall not have been received in the Managers' nominated account within seven running days of receipt by the Owners of the Managers' written demand for payments, or
       (b) The Vessel is repossessed or arrested by the Mortgages, or
       (c) at any time the Owners should take or omit to take any action or steps that prejudice or are likely to prejudice the Vessel's Safety Management Certificate ("SMC") or the Managers' Document of Compliance ("DOC").
(ii)   If the Owners:
       (a) Fail to meet their obligations under sub-clauses 5.2 and 5.3 of this Agreement for any reason within their control, or
       (b) proceed with the employment of or continue to employ the Vessel in the carriage of contraband, blockade running, or in an unlawful trade, or on a voyage which in the reasonable opinion of the Managers is unduly hazardous or improper, or materially breach their obligations under this Agreement,
       the Managers may give notice to the Owners requiring them to remedy the situation. In the event that the Owners fail to remedy the situation to the satisfaction of the Managers, within seven running days, the Managers shall be entitled to terminate the Agreement with immediate effect by notice in writing.
19.2 Managers' Default
If the Managers fail to meet their obligations under Clauses 3 and 4 of this Agreement for any reason within the control of the Managers, the Owners may give notice to the Managers of the default, requiring them to remedy it as soon as practicably possible. In the event that the Managers fail to remedy it within a reasonable time to the satisfaction of the Owners, the Owners shall be entitled

VM

# PART II
## Ship Management Agreement

to terminate the Agreement with immediate effect by notice in writing. (565-566)

**19.3 Extraordinary Termination** (567)
This Agreement shall be deemed to be terminated in the case of the sale of the Vessel or if the Vessel becomes a total loss or is declared as a constructive compromise or arranged total loss or is requisitioned. (568-571)

19.4 For the purpose of sub-clause 19.3 hereof: (572)

(i)   the date upon which the Vessel is to be treated as having been sold or otherwise disposed of shall be the date on which the Owners cease to be registered as Owners of the Vessel; (573-576)

(ii)  the Vessel shall not be deemed to be lost unless either she has become an actual total loss or agreement has been reached with her underwriters in respect of her constructive, compromised or arranged total loss or if such agreement with her underwriters is not reached it is adjudged by a competent tribunal that a constructive loss of the Vessel has occurred. (577-583)

19.5  This Agreement shall terminate forthwith in the event of an order being made or resolution passed for the winding up, dissolution, liquidation or bankruptcy of either party (otherwise than for the purpose of reconstruction or amalgamation) or if a receiver is pointed, or if it suspends payment, ceases to carry on business or makes any special arrangement or composition with its creditors. (584-589)

19.6  The termination of this Agreement shall be without prejudice to all rights accrued between the parties prior to the date of termination. (590-592)

19.7  Following any event terminating this Agreement, within 30 days, the Managers will provide a statement detailing the amounts owed to/by the Managers by/to the Owners including all unpaid fees and commissions for Management Services. This statement will also include cost estimates of all items purchased or expensed, their transportation expenses as well as any Severance Costs and crew repatriation expense. Such accounting statements to be settled by the party owing monies within 30 days of receipt. (593-599)

(600-601)

## 20.   Law and Arbitration (602)
This Agreement shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this Agreement shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provision of this Clause. (603-607)

The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association (LMAA) Terms current at the time when the arbitration proceedings are commenced. (608-610)

The reference shall be to three arbitrators. A party wishing to refer a dispute to arbitration and send notice of such appointment in writing to the other party requiring the other party to appoint its own arbitrator within 14 calendar days of that notice and stating that it will appoint its arbitrator as sole arbitrator unless the other party appoints its own arbitrator and gives notice that it has done so within the 14 days specified. If the other party does not appoint its own arbitrator and give notice that it has done so within the 14 days specified, the party referring a dispute to arbitration may, without the requirement of any further prior notice to the other party, appoint its arbitrator as sole arbitrator and shall advise the other party accordingly. The award of sole arbitrator shall be binding on both parties as if he had been appointed by agreement. (611-624)

Nothing herein shall prevent the parties agreeing in writing to vary these provisions to provide for the appointment of a sole arbitrator. In cases where the claim nor any counterclaim exceeds the Sum of USD50,000 (or other such sum as the parties may agree) (625-628)

The arbitration shall be conducted in accordance with the LMAA Small Claims Procedure current at the time when the arbitration proceedings are commenced. (629-631)

(632)
## 21.   Notices
21.1  Any notice to be given by either party to the other party shall be in writing and may be sent by courier, fax, telex, registered, recorded or certified mail or by personal service. (633-635)

21.2  The address of the Parties for Service of such communication shall be as stated in Boxes 21 and 22, respectively. (636-638)

21.3  Notices are effective upon receipt, and if received within normal business hours at the place of the party so served. Otherwise upon the opening of the next business day at the place of the party to be served. (639-642)

Annexes:

| | | |
|---|---|---|
| "A" (Details of Vessel) | YES ✓ | NO ☐ |
| "B" (Details of Crew) | YES ✓ | NO ☐ |
| "C" (Budget) | YES ✓ | NO ☐ |
| "D" (Associated Vessels) | YES ✓ | NO ☐ |
| "E" (Additional Clauses) | YES ✓ | NO ☐ |

NH

VM

## ANNEX "A" (DETAILS OF VESSEL OR VESSELS)

Date of Agreement:          NOVEMBER 01, 2004

Name of Vessel(s):          MT "ALLORO"  EX SOEI

Particulars of Vessel(s):   VESSEL TYPE:  DOUBLE HULL OIL TANKER

                            IMO # 9162033
                            YEAR OF BUILT:  1997
                            CLASS:  NK

                            GROSS TONNAGE:  42,237
                            NET TONNAGE:       18,913
                            DEADWEIGHT:        69,999

                            LENGTH:  235.9 MTS.
                            BREADTH:  36.0 MTS.
                            DEPTH:  18.0 MTS.

NM
VM

## ANNEX "B" (DETAILS OF CREW)

Date of Agreement:

NOVEMBER 01, 2004

Details of Crew:

| Numbers | Rank | Nationality |
|---|---|---|
| 1 | Master | Venezuelan |
| 1 | Chief Officer | Venezuelan |
| 1 | 2/Officer | Venezuelan |
| 2 | 3/Officer | Venezuelan |
| 1 | Chief Engineer | Venezuelan |
| 1 | 2/Engineer | Venezuelan |
| 1 | 3/Engineer | Venezuelan |
| 2 | 4/Engineer | Venezuelan |
| 1 | Electrical Officer | Venezuelan |
| 1 | Bosun | Venezuelan |
| 1 | Pumpman | Venezuelan |
| 1 | Engine Fitter | Venezuelan |
| 3 | Able Seamen | Venezuelan |
| 3 | Ordinary Seamen | Venezuelan |
| 3 | Oilers / Motormen | Venezuelan |
| 1 | Wiper | Venezuelan |
| 2 | Cook | Venezuelan |
| 1 | Mess man | Venezuelan |

- Total 27 crew on board. Plus additional and/or different ranks as the Owners may require or the Managers decide as circumstances dictate.

- Manning levels are subject to review based on efficiency and productivity observed.

- Manning budget is subject to change if in any event local Venezuelan regulations are modified.

NM

VM

## ANNEX "C" (REGULAR BUDGET & IRREGULAR BUDGET)

Date of Agreement: NOVEMBER 01, 2004

Manager's Budget for the 2005 to be adjusted pro-rata upon commencement IN 2004. Docking date to confirm.

CERTIFICATION

| | | |
|---|---|---|
| 665110 | SURVEYS | 20800 |
| 665120 | OIL CO APPROVAL | 27500 |
| 706170 | VESSEL REGISTRATION | 12500 |
| 665130 | OPA90ISM | 12800 |
| 665160 | ISPS | 26500 |
| 665140 | BUNKER ANALYSIS | 4200 |

SUB TOTAL                104300

REPAIRS

| | | |
|---|---|---|
| 665210 | RADIO | 2000 |
| 665215 | NAVIGATION EQUIPMENT | 4750 |
| 665220 | SOLAS | 14000 |
| 665230 | CARGO EQUIPMENT | 10000 |
| 665235 | DECK MACHINERY | 0 |
| 665240 | MAIN ENGINE | 8000 |
| 665250 | AUX ENGINES | 14500 |
| 665260 | BOILERS | 5000 |
| 665270 | PUMPS | 2250 |
| 665275 | AUX MACHINERY | 1500 |
| 665280 | ELECTRICAL | 2000 |
| 665285 | ACCOMMODATION | 0 |
| 665290 | STRUCTURE | 2500 |
| 665295 | RIDING CREWS | 0 |
| 665296 | SUPERVISION & TRAVEL | 12500 |

SUB TOTAL                79000

SPARES

| | | |
|---|---|---|
| 665310 | RADIO | 5000 |
| 665315 | NAVIGATION EQUIPMENT | 3000 |
| 665320 | SOLAS | 9750 |
| 665330 | CARGO EQUIPMENT | 22500 |
| 665335 | DECK MACHINERY | 10500 |
| 665340 | MAIN ENGINE | 23750 |
| 665350 | AUX ENGINES | 36550 |
| 665360 | BOILERS | 8250 |
| 665370 | PUMPS | 17750 |
| 665375 | AUX MACHINERY | 26350 |
| 665380 | ELECTRICAL | 1000 |
| 665385 | ACCOMMODATION | 3500 |
| 665390 | STRUCTURE | 0 |
| 665395 | FREIGHT & FORWARDING | 48500 |
| 665396 | AGENCY FEES | 6500 |



NM
VM

SUB TOTAL                                    222900

STORES

| 635310 | LUB OIL & GREASE | 104000 |
| 635320 | CHIEF OFFICER | 24000 |
| 635325 | P.P.E. | 10000 |
| 635330 | CHIEF ENGINEER | 28000 |
| 635340 | CHIEF COOK | 6000 |
| 635360 | CHARTS | 7936 |
| 635380 | PAINT | 12500 |
| 635390 | CHEMICALS | 11100 |
| 635395 | GASES | 4000 |

                                                          103536

SUB TOTAL                                    207536

MISCELLANEOUS

696070   PMS SYSTEM / SOFTWARE SUPPORT    38000

SUB TOTAL                                    38000

COMMUNICATIONS                               26500

SUB TOTAL                                    26500

MANAGEMENT EXPENSES
          MANAGEMENT FEE                     140000
          STATIONARY                         2000

SUB TOTAL                                    142000

GRAND TOTAL                                  820236

DAILY RUNNING COSTS (Technical)                           **2247**

          P&I INSURANCE                      140220
          H&M INSURANCE                      99025
          COFRs                              20000
          FDAD                               5000
          WAR                                8900

SUB TOTAL                                    273145

          CREW                               995,144

MICELLANEOUS
          BANK CHARGES                       3000
          EXCH. VARIANCE                     2500

SUB TOTAL                                    5500

DC
NM
VM

TOTAL                                                    2094025

DAILY RUNNING COSTS (Total)                              5737

OFF HIRE
MOBILIZATION DD/IWS              0
DD/IWS                           0
OFF SERVICE                      4
TOTAL                            4

ANNEX "D" (ASSOCIATED VESSELS) TO

NOTE:  PARTIES SHOULD BE AWARE THAT BY COMPLETING THIS ANNEX "D" THEY WILL BE SUBJECT TO THE PROVISIONS OF SUB-CLAUSE 19.1(i)(a) OF THIS AGREEMENT.

Date of Agreement:

NOVEMBER 01, 2004

Details of Associated Vessel:

GENERAL ZAMORA
BAHIA DE POZUELOS



VM

## ANNEX "E" (ADDITIONAL CLAUSES)

**3.1 Crew Management**

The clause starting 'The Manager shall be subrogated..' on lines 83 – 86 to be deleted.

**3.2 Technical Management**

Insert (vi) after (v) at line 109. Quote: (vi) as and when required by the Owners, the Managers will request a vetting inspection (s) from any specified oil major. Unquote

**3.5 Accounting Services**
Insert at end line 161. Quote: Such records and accounts shall be reflected in a separate set of accounts in the name of the Owners and/or the Vessel. Unquote

Insert new sub-clause (iii) at line 162. Quote: (iii) The Managers shall provide the Owners with a copy of all invoices, vouchers and other documentation and information relating to the said accounting records as may be reasonably required, within 45 days of the reported month-end. Unquote.

**8. Management Fee**
Insert in sub-clause 8.3 at line 292 after "traveling expenses" Quote: ,attendance fees, insurance claim handling costs Unquote

In line 300, delete the word "three" and replace with "two" so as to read "two calendar months".

**9. Budgets and Management of Funds**

Insert in line 331 after "require.", the following new wording. Quote: The Manager will submit additional budgets for irregular and extraordinary items as and when required in addition to annual budget.

The existing sentence in line 331 after "require" to be changed to read Quote The budget for the first 12 month period as presented in Annex 'C' hereto will be adjusted by mutual agreement to cover the balance of the calendar year from the commencement date. Unquote.

9.2 In line 336 delete "one month" and replace with "fifteen days".

9.3 Insert at end line 352. Quote: The Managers will open an account in the Vessel's name at Fortis Bank BV Rotterdam (or any other bank as maybe advised from time to time by the Managers). The Managers will not use any funds deposited into this account by the Owners other than to pay for expenses and fees incurred in line with this Ship Management Agreement. Unquote.

End of Additional Clauses

VM

# EX. C

| | |
|---|---|
| 1. Date of Agreement<br>JANUARY 19, 2005 | **STANDARD SHIP MANAGEMENT**<br>**AGREEMENT**<br><br>**PART I** |
| 2. a. Name of Vessel (the "Vessel"):<br>MT "ALMIRANTE BRION"<br>EX CORCOVADO  EX MINERVA HELEN<br><br>Flag: VENEZUELA | |
| 3. Owners (name and place of registered office (Cl.1))<br><br>SURAMERICANA DE TRANSPORTE DE PETROLERO, C.A.<br>Name<br>AVENIDA FRANCISCO DE MIRANDA ,<br>EDIFICIO PARQUE CRISTAL,<br>TORRE OESTE PISO 2, OFFICINA 2-1<br>LOS PALOS GRANDES, CARACAS 1060<br>VENEZUELA<br><br>Place of registered office<br>**Caracas, Venezuela** | 4. Managers (name and place of registered office (Cl.1))<br><br>Novoship (UK) Ltd.<br>Name<br>**Watergate House**<br>**13-15 York Buildings**<br>**London**<br>**WC2N 6JU**<br><br>Place of registered office<br>**London, England** |
| 5. Day and year of commencement of Agreement (Cl.2)<br><br>ON OR AROUND JANUARY 24th 2005 | 6. Crew management (state "yes" or "no" as agreed) (Cl.3.1)<br>YES |
| 7. Technical Management (state "yes" or "no" as agreed) (Cl.3.2)<br>YES | 8. Commercial Management  (state "yes" or "no" as agreed) (Cl.3.3)<br>NO<br><br>Agreed commission      % flat on all hires and freights |
| 9. Insurance Arrangements (state "yes" or "no" as agreed) (Cl.3.4(i))<br>YES<br>Agreed commission 0% flat on all gross premium.  Agreed collecting<br>Commission  5%  flat of the amount of insurance claim agreed by<br>Underwriter (Cl.3.4(ii)) | 10. Accounting Services (state "yes" or "no" as agreed) (Cl.3.5)<br><br>YES |
| 11. Sale or purchase of the Vessel (state "yes" or "no" as agreed) (Cl.3.6)<br><br>NO<br><br>Agreed commission      % flat on price of Vessel | 12. Provisions (state "yes" or "no" as agreed) (Cl.3.7)<br><br>YES |
| 13. Bunkering (state "yes" or "no" as agreed) (Cl.3.8)<br><br>NO<br><br>Agreed commission_____flat on all bunkers purchased | 14. Chartering Services Period (only to be filled in if "yes" stated in Box 7)<br>(Cl.3.3(i))<br>NO |
| 15. Owners' Insurance (state alternative (i), (ii) or (iii) of Cl.6.3)<br><br>(ii) | 16. Annual Management Fee (state annual amount) (Cl.8.1)<br><br>US$ 165,000 PER ANNUM |
| 17. Severance Costs (state maximum amount) (Cl.8.4(ii))<br>EQUIVALENT TO  THREE (3) MONTHS SALARY INCLUDING<br>OVERTIME, VACATION PAY AND OTHER GUARANTEED<br>PAYMENTS | 18. Advance Deposit (state "yes" or "no" as agreed) (Cl.10.1)<br>YES<br>If "yes" state amount of Advance Deposit:  USD 75,000.- |
| 19. Day and year of termination of Agreement (Cl.18)<br><br>31st DECEMBER 2005 | 20. Law and Arbitration (Cl.20)<br>ENGLISH LAW<br>LONDON ARBITRATION |
| 21. Notices (state postal address, telephone and telefax number for serving<br>notice and communication to the Owners) (Cl.21)<br><br>PARQUE CRISTAL, TORRE ESTE. PISO 13<br>OFIC. 13-10, AV. FRANCISCO DE MIRANDEA<br>LOS PALOS GRANDES. CARACAS<br>TEL: +58 212 216 0550<br>FAX: +58 212 216 0549 | 22. Notices (state postal address, telephone and telefax number for serving<br>notice and  communication to the Managers) (Cl.21)<br><br>WATERGATE HOUSE<br>13-15 YORK BUILDINGS<br>LONDON WC2N 6JU<br>TEL: +44 (0)20 7747 9100<br>FAX: +44 (0)20 7747 9000 |

It is mutually agreed between the party stated in Box 3 and the party stated in Box 4 that this Agreement consisting of PART I and PART II as well as Annexes "A" (Details of Vessel), "B" (Details of Crew), "C" (Budget) , "D" (Associated Vessels) and "E" (Additional Clauses) attached hereto, shall be performed subject to the conditions contained herein.  In the event of a conflict of conditions, the provisions of PART I and Annexes "A", "B", "C", "D" and "E" shall prevail over those of PART II to the extent of such conflict but no further.

| Signature(s) (Owners)<br><br><br>PRINT NAME:<br>SHIPMAN/1/0699/REV01 | Signature(s) (Managers)<br><br><br>PRINT NAME: |

# PART II
## Ship Management Agreement

**1.   Definitions**
In this Agreement save where the context otherwise requires, the following words and expressions shall have the meanings hereby assigned to them.

*"Owners"* means the party identified in Box 3.
*"Managers"* means the party identified in Box 4.
*"Vessel"* means the vessel or vessels details of which are set out in Annex "A" attached hereto.
*"Crew"* means the Master, officers and ratings of the numbers, rank and nationality specified in Annex "B" attached hereto.
*"Crew Support Costs"* means all expense of a general nature which are incurred by the Managers for the purpose of providing an efficient and economic management service and, without prejudice to the generality of the foregoing, shall include the cost of medicals, crew standby pay, training schemes for officers and ratings, cadet training schemes, sick pay, study pay, recruitment and interviews.
*"Severance Costs"* means the costs which the Managers are legally obliged to pay to or in respect of the Crew as a result of the early termination of any employment contract for service on the Vessel.
*"Crew Insurances"* means insurances against crew risks which shall include but not be limited to death, sickness, repatriation, injury, shipwreck unemployment indemnity and loss of personal effects.
*"Management Services"* means the services specified in sub-clauses 3.1 to 3.8 as indicated affirmatively in Boxes 6 to 16.
*"ISM Code"* means the International Management Code for the Safe Operation of Ships and for Pollution Prevention as adopted by the International Maritime Organization (IMO) by resolution A.741(18) any subsequent amendment thereto.
*"STCW 95"* means the International Convention on Standards of Training, Certification and Watchkeeping for Seafarers, 1978, as amended in 1995 or any subsequent amendment thereto.

**2.   Appointment of Managers**
With effect from the day and year stated in Box 5 and continuing unless and until terminated as provided herein, the Owners hereby appoint the Managers and the Managers hereby agree to act as the Managers of the Vessel.

**3.   Basis of Agreement**
Subject to the terms and conditions herein provided, during the period of this Agreement, the Managers shall carry out Management Services in respect of the Vessel as agents for and on behalf of the Owners. The Managers shall have authority to take such actions as they may from time to time in their absolute discretion consider to be necessary to enable them to perform this Agreement in accordance with sound ship management practice.
**3.1 (a) Crew Management**
*(only applicable if agreed according to Box 6)*
The Managers shall provide suitably qualified Crew for the Vessel as required by the Owners in accordance with the STCW 95 requirements, provision of which includes but is not limited to the following functions:
(i)     Selecting and engaging the Vessel's Crew, including payroll arrangements, pension administration, and insurances for the Crew other than those mentioned in Clause 6;
        Ensuring that the applicable requirements of the law of the flag of the Vessel are satisfied in respect of manning levels, rank, qualification and certification of the Crew and employment regulations including Crew's tax, social insurance, discipline and other requirements.
(ii)    ensuring that all members of the Crew have passed a medical examination with a qualified doctor certifying that they are fit for the duties for which they are engaged and are in possession of valid medical certificates issued in accordance with appropriate flag State requirements. In the absence of applicable flag State requirements the medical certificate shall be dated not more than three months prior to the respective Crew members leaving their country of domicile and maintained for the duration of their service on board the Vessel;
(iv)    arranging transportation of the Crew including repatriation
(v)     training of the Crew and supervising their efficiency;
(vi)    conducting union negotiations;
(vii)   implementing the Managers' drug and alcohol policy unless otherwise agreed.

**3.1(b)**
The Owners may upon reasonable notice request the Managers to transfer and/or replace any personnel. The Managers will comply with the Owner's request at the first practical opportunity. The Managers may transfer or replace any personnel at its exclusive discretion, always considering minimal costs for the Owners. The Managers shall be subrogated to all rights of the crew against the Vessel and the Owners for all wages, travel related expenses and other employment benefits paid by the Managers.
**3.2   Technical Management**
*(only applicable if agreed according to Box 7)*
The Managers shall provide technical management which includes but is not limited to, the following functions:
(i)     provision of competent personnel to supervise the maintenance and general efficiency of the Vessel;
(ii)    arrangement and supervision of dry dockings, repairs, alterations and the upkeep of the Vessel to the standards

required by the Owners provided that the Managers shall be entitled to incur the necessary expenditure to ensure that the Vessel will comply with the law of the flag of the Vessel and of the places where she trades, and all requirements and recommendations of the classification society;
(iii)   arrangement of the supply of necessary stores, spares and lubrication oil;
(iv)    appointment of surveyors and technical consultants as the Managers may consider from time to time to be necessary;
(v)     development, implementation and maintenance of an onboard Safety Management System (SMS) in accordance with the ISM Code (see sub-clauses 4.2 and 6.3).

**3.3   Commercial Management**
*(only applicable if agreed according to Box 8)*
The Managers shall provide the commercial operation of the Vessel, as required by the Owners, which includes, but is not limited to, the following functions;
(i)     providing chartering services in accordance with the Owners' instructions which include, but are not limited to, seeking and negotiating employment for the Vessel and the conclusion (including the execution thereof) of charter parties or other contracts relating to the employment of the Vessel. If such a contract exceeds the period stated in Box 14, consent thereto in writing shall first be obtained from the Owners;
(ii)    arranging of the proper payment to Owners or their nominees of all hire and/or freight revenues or other moneys of whatsoever nature to which Owners may be entitled arising out of the employment or otherwise in connection with the Vessel;
(iii)   providing voyage estimates and accounts and calculations of hire, freights, demurrage and/or dispatch moneys due from or due to the charterers of the Vessel;
(iv)    issuing of voyage instructions;
(v)     appointing agents;
(vi)    appointing stevedores;
(vii)   arranging surveys associated with the commercial operation of the vessel.

**3.4   Insurance Arrangements**
*(only applicable if agreed according to Box 9)*
The Managers shall:
(i)     arrange insurances in accordance with Clause 6, on such terms and conditions as the Owners shall have instructed or agreed, in particular regarding conditions, insured values, deductibles and franchises;
(ii)    prepare all the insurance average (particular and general) salvage and other marine claims in connection to the Vessel and will submit a statement of costs and expenses to the Owners for review in order for the Managers to submit to the underwriters for settlement.
The Managers, at their discretion may appoint average adjuster(s) and other professional adjusters when such services are appropriate and whenever possible, in conjunction with the Owner, who shall not unreasonably delay or withhold its approval to such appointment.
**3.5   Accounting Services**
*(only applicable if agreed according to Box 10)*
The Managers shall:
(i)     establish an accounting system which meets the requirements of the Owners and provide regular accounting services, supply regular reports and records,
(ii)    maintain the records of all costs and expenditure incurred as well be data necessary or proper for the settlement of accounts between the parties.
**3.6   Sale or Purchase of the Vessel**
*(only applicable if agreed according to Box 11)*
The Managers shall in accordance with the Owners' instructions, supervise the sale or purchase of the Vessel, including the Performance of any sale or purchase agreement.
**3.7   Provisions** *(only applicable if agreed according to Box 12)*
The Managers shall arrange for the supply of provisions.
**3.8   Bunkering** *(only applicable if agreed according to Box 13)*
The Managers shall at Owners' expense arrange for the provision of bunker fuel of the quality specified by the Managers as required for the Vessel's trade.

**4.   Managers' Obligations**
4.1   The Managers undertake to use their best endeavors to provide the agreed Management Services as agents for and on behalf of the Owners in accordance with sound ship management practice and to protect and promote the interest of the Owners in all matters relating to the provision of services hereunder.
Provided, however, that the Managers in the performance of their management responsibilities under this Agreement shall be entitled to have regard to their overall responsibility in relation to all vessels as may from time to time be entrusted to their Management and in particular, but without prejudice to the generality of the foregoing, the Managers shall be entitled to allocate available supplies, manpower and services in such manner as in the prevailing circumstances the Managers in their absolute discretion consider to be fair and reasonable.
4.2   Where the Managers are providing Technical Management in accordance with sub-clause 3.2, they shall ensure that the requirements of the law of the flag of the Vessel are satisfied and

## PART II
## Ship Management Agreement

they shall in particular be deemed to be the "Company" as defined by the ISM Code, assuming the responsibility for the operation of the Vessel for ISM Code purposes and taking over the duties and responsibilities imposed by the ISM Code when applicable. 191–194

**5.    Owners' Obligations** 195
5.1    The Owners shall pay all sums due to the Managers punctually in accordance with the terms of this Agreement. 196–197
5.2    Where the Managers are providing Technical Management in accordance with sub-clause 3.2, the Owners shall: 198–199
(i)    ensure that all officers and ratings supplied by them or on their behalf comply with the requirements of STCW 95; 200–201
(ii)    instruct such officers and ratings to obey all reasonable orders of the Managers in connection with the operation of the Managers' SMS. 202–204
5.3    Where the Managers are not providing Technical Management in accordance with sub-clause 3.2, the Owners shall ensure that the requirements of the law of the flag of the Vessel are satisfied and that they, or such other entity as may be appointed by them and identified to the Managers, shall be deemed to be the "Company" as defined by the ISM Code assuming the responsibility for the operation of the Vessel and taking over the duties and responsibilities imposed by the ISM Code when applicable. 205–212

**6.    Insurance Policies** 213
The Owners shall ensure, whether by instructing the Managers under sub-clause 3.4 or otherwise, that throughout the period of this Agreement: 214–216
    at the Owners' expense, the Vessel is insured for not less than ..or sound market value or entered for her full gross tonnage, as the case may be for: 217–219
(i)    usual hull and machinery marine risks (including crew negligence) and excess liabilities on terms equivalent to the Institute Time Clauses – Hull 1.11.95 220–222
(ii)    protection and indemnity risks (including pollution risks, diversion expenses and crew insurances); and 223–224
(iii)    war risks (including protection and indemnity and crew risks). 225–226
In accordance with the best practice of a prudent owner of vessels of a similar type to the Vessel, with first class insurance companies, underwriters or associations ("the Owners' Insurances"); 227–229
6.2    all premiums and calls on the Owners' Insurances are paid promptly by their due date. 230–231
6.3    the Owners' Insurances name the Managers and, subject to underwriters' agreement, any third party designated by the Managers as a joint assured, with full cover, with the Owners obtaining cover in respect of each of the insurances specified in sub-clause 6.1 232–236
(i)    on terms whereby the Managers and any such third party are liable in respect of premiums or calls arising in connection with the Owners' Insurances; or 237–239
(ii)    if reasonably obtainable, on terms such that neither the Managers nor any such third party shall be under any liability in respect of premiums or calls arising in connection with the Owners' Insurances; or 240–243
(iii)    on such other terms as may be agreed in writing. 244
Indicate alternative (i), (ii) or (iii) in Box 16. If Box 15 is left blank then (ii) applies. 245–246
6.4    written evidence is provided, to the reasonable satisfaction of ⁀he Managers, of the Owners' compliance with their obligations ⁀der this Clause 6 within a reasonable time of the commencement of the Agreement, and of each renewal date and, if specifically requested, of each payment date of the Owners' Premium and/or call for the Insurances. 247–252

**7.    Income Collected and Expenses Paid on Behalf of Owners** 253–254
7.1    All moneys collected by the Managers under the terms of this Agreement (other than moneys payable by the Owners to the Managers) and any interest thereon shall be held to the credit of the Owners in a separate bank account. 255–258
7.2    All expenses incurred by the Managers under the terms of this Agreement on behalf of the Owners (including expenses as provided in Clause 8) may be debited against the Owners from the account referred to under sub-clause 7.1 but shall in any event remain payable by the Owners to the Managers on demand. 259–263
7.3    It is acknowledged that the Managers furnish the goods and services on the credit of the Vessel and that this Agreement should not be considered as a joint venture between the Managers and the Owners. 264–267

**8.    Management Fee** 268
8.1    The Owners shall pay to the Managers for their services    as Managers under this Agreement an annual management fee as stated in Box 16 which shall be payable by equal installments monthly in advance, the first installment being payable on the commencement of this Agreement (see Clause 2 and Box 5) and subsequent installments being payable every month. The Management Fee is a net amount payable to the Managers in the London or any other place designated by the Managers without set-off or deduction and shall be payable in the lawful currency of the United States, free and clear of any withholding tax, other taxes, levies, duties, etc. In the event that any such taxes or levies are enforced which reduce the Management Fee received by the Managers, then the Owners shall promptly pay such additional amounts as are necessary to ensure that the Management Fee received by the Managers is the full Management Fee described 269–283

above. 284
8.2    The Management Fee shall be subject to an annual review on the anniversary date of the Agreement and the proposed fee shall be presented in the annual budget referred to in sub-clause 9.1. 285–287
8.3    The Managers shall, at no extra cost to the Owners, provide their own office accommodation, office staff, facilities and stationery. Without limiting the generality of Clause 7 the Owners shall reimburse the Managers for delivery and communication expenses, travelling expenses, and other out of pocket expenses properly incurred by the Managers in pursuance of the Management Services. 288–294
8.4    In the event of the appointment of the Managers being terminated by the Owners or the Managers in accordance with the provisions of Clauses 18 and 19 other than by reason of default by the Managers, the "Management Fee" payable to the Managers according to the provisions of sub-clause 8.1, shall continue to be payable for a further period of three calendar months as from the termination date. In addition, provided that the Managers provide Crew for the Vessel in accordance with sub-clause 3.1 295–303
(i)    the Owners shall continue to pay Crew Support Costs during the said further period of three calendar months; and 304–305
(ii)    the Owners shall pay an equitable proportion of any Severance Costs which may materialize, not exceeding the amount stated in Box 17. 306–308
8.5    If the Owners decide to lay-up the Vessel whilst this Agreement remains in force and such lay-up lasts for more   than three months, an appropriate reduction of the Management Fee for the period exceeding three months until one month before the Vessel is again put into service shall be mutually agreed between the parties. 309–314
8.6    Unless otherwise agreed in writing all discounts and commissions obtained by the Managers in the course of the management of the Vessel shall be credited to the Owners, except volume discounts earned by the Managers and not directly attributable to the management of the Vessel. 315–319
8.7    The Managers shall have a lien on the Vessel and its income for all unpaid expenses associated with the Vessel, including, but not limited to crew costs and related travel expenses, Management Fees, the supply of necessaries, spares, repairs, insurance premium or calls, technical or other services furnished to the Vessel and shall be subrogated to all rights of suppliers from whom supplies are ordered and delivered to the Vessel in any place(s) around the world. 320–327

**9.    Budgets and Management of Funds** 328
9.1    The Managers shall present to the Owners annually a budget for the following twelve months in such form as the Owners require. The budget for the first year hereof is set out in Annex "C" hereto. Subsequent annual budgets shall be prepared by the Managers and submitted to the Owners not less than two months prior to the end of each calendar year. 329–334
9.2    The Owners shall indicate to the Managers their acceptance and approval of the annual budget within one month of presentation and in the absence of any such indication the Managers shall be entitled to assume that the Owners have accepted the proposed budget. 335–339
9.3    Following the agreement of the budget, the Managers shall prepare and present to the Owners their estimate of the working capital requirement of the Vessel and the Managers shall each month up-date this estimate. Based thereon, the Managers shall each month request the Owners in writing for the funds required to run the Vessel for the ensuing month (the "Funding Request") including the payment of any occasional or extraordinary item of expenditure, such as emergency repair costs, additional insurance premiums, bunkers or provisions. Such funds shall be received by the Managers within ten running days after the receipt by the Owners of the Managers' written Funding Request and shall be held by the Managers to the credit of the Owners in a separate bank account for the Vessel. 340–352
9.4    The Managers shall produce a comparison between budgeted and actual expenditure of the Vessel in such form as required by the Owners monthly or at such other intervals as mutually agreed. 353–356
9.5    Notwithstanding anything contained herein to the   contrary, the Managers shall in no circumstances be required to use or commit their own funds to finance the provision of any of the Management Services. 357–360

**10.    Advance Deposit** 361
10.1    Prior to the commencement of this Agreement the Owners shall place a deposit with the Managers (the Advance Deposit) the amount which shall be agreed between the Managers and the Owners, but in any event, shall not be less than the equivalent of thirty (30) times the budgeted daily operating expenses (as may be amended from time to time) as indicated in the Managers' Budget found in Annex "C" attached hereto. 362–368
10.2    In the event of any non-payment by the Owners of any sum due under this Agreement, the Managers are entitled (but not obligated) to apply the Advance Deposit against any such expenses or monies due in which case the Owners shall, upon notice of such application, immediately deposit such additional monies as may be necessary to maintain the Advance Deposit in its agreed amount prior to such application. 369–375
10.3    The Owners' obligation to maintain the Advance Deposit in the agreed amount is separate and distinct from the Owners' obligations to make prompt payments when due of all amounts 376–378

# PART II
## Ship Management Agreement

due under this Agreement.
10.4  Upon the termination of this Agreement, the Managers shall be entitled (but not obligated) to apply against the Advance Deposit any and all expenses then outstanding, actual, contingent or otherwise. After the application of such expenses and the payment of all outstanding fees and expenses due to the Managers, the Managers shall return to the Owners any remaining balance in the Advance Deposit.

**11.  Managers' Right to Sub-Contract**
The Managers shall have the right to sub-contract any of their obligations hereunder, including those mentioned in sub-clause 3.1, without the prior written consent of the Owners. In the event of such a sub-contract the Managers will not be responsible for the negligent act or default of the sub-contractor unless the Managers fail to exercise due care in the appointment and supervision of such sub-contractor.

**12.  Responsibilities**
12.1  Force Majeure – Neither the Owners nor the Managers shall be under any liability for any failure to perform any of their obligations hereunder by reason of any cause whatsoever of any nature or kind beyond their reasonable control.
12.2  Liability to Owners – (i) Without prejudice to sub-clause 12.1, the Managers shall be under no liability whatsoever to the Owners for any loss, damage, delay or expense of whatsoever nature, whether direct or indirect, (including but not limited to loss of profit arising out of or in connection with detention of or delay to the Vessel) and howsoever arising in the course of performance of the Management Services UNLESS same is ...oved to have resulted solely from the gross negligence or wilful default of the Managers or their employees, or agent employed by them in connection with the Vessel, in which case (save where loss, damage, delay or expense has resulted from the Managers' personal act or omission committed with the intent to cause same or recklessly and with knowledge that such loss, damage, delay or expense would probably result) the Manager's liability for each incident or series of incidents giving rise to a claim or claims shall never exceed a total of ten times the annual Management Fee payable hereunder.
(ii)  Notwithstanding anything that may appear to the contrary in this Agreement, the Managers shall not be liable for any of the actions of the Crew, even if such actions are negligent, grossly negligent or wilful, except only to the extent that they are shown to have resulted from a failure by the Managers to discharge their obligations under sub-clause 3.1, in which case their liability shall be limited in accordance with the terms of this Clause 12.
12.3  Indemnity – Except to the extent and solely for the amount therein set out that the Managers would be liable under sub-clause 12.2, the Owners hereby undertake to keep the Managers and their employees, agents and sub-contractors indemnified and to hold them harmless against all actions, proceedings, claims, demands or liabilities whatsoever or howsoever arising which may be brought against them or incurred or suffered by them arising out of or in connection with the performance of the Agreement, and against and in respect of all costs, losses, damages and expenses (including legal costs and expenses on a full indemnity basis) which the Managers may suffer or incur (either directly or indirectly) in the course of the performance of this Agreement.
12.4  "Himalaya" – It is hereby expressly agreed that no employee or agent of the Managers (including every sub-contractor from time ... time employed by the Managers) shall in any circumstances whatsoever be under any liability whatsoever to the Owners for any loss, damage or delay of whatsoever kind arising or resulting directly or indirectly from any act, neglect or default on his part while acting in the course of or in connection with his employment and, without prejudice to the generality of the foregoing provisions in this Clause 12, every exemption, limitation, condition and liberty herein contained and every right, exemption from liability, defense and immunity of whatsoever nature applicable to the Managers or to which the Managers are entitled hereunder shall also be available and shall extend to protect every such employee or agent of the Managers and/or sub-contractors acting as aforesaid and for the purpose of all the foregoing provisions of this Clause 12 the Managers and/or sub-contractors are or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all persons who are or might be their servants or agents from time to time (including sub-contractors as aforesaid) and all such persons shall to this extent be or be deed to be parties to this Agreement.

**13.  Documentation**
13.1  Where the Managers are providing Technical Management in accordance with sub-clause 3.2 and/or Crew Management in accordance with sub-clause 3.1, they shall make available, upon Owners' request, all documentation and records related to the Safety Management System (SMS) and/or the Crew which the Owners need in order to demonstrate compliance with the ISM Code and STCW 95 or to defend a claim against a third party.
13.2  All of the Managers' ISM system(s) on board the Vessel are the property of the Managers. These systems include the SMS, software, which may be held in the form of files, binders, forms, circulars, manuals, handbooks, contracts, etc. No copies of the system shall be taken by the Owners. However if requirements necessitate such systems being copied for or shown to the Owners, in whole or in part, the Owners will not utilize such information for any other purpose than the control of the Vessel while it remains under the Managers' management.

**14.  General Administration**
14.1  The Managers shall handle and settle all claims arising out of the Management Services hereunder and keep the Owners informed regarding any incident of which the Managers become aware which gives or may give rise to claims or disputes involving third parties.
14.2  The Managers shall, as instructed by the Owners, bring or defend actions, suits or proceedings in connection with matters entrusted to the Managers according to this Agreement.
14.3  The Managers shall also have power to obtain legal or technical or other outside expert advice in relation to the handling and settlement of claims and disputes or all other matters affecting the interests of the Owners in respect of the Vessel.
14.4  The Owners shall arrange for the provision of any necessary guarantee bond or other security.
14.5  Any costs reasonably incurred by the Managers in carrying out their obligations according to Clause 14 shall be reimbursed by the Owners.
14.6  For a period of twelve (12) months following expiry or termination of this Agreement, neither the Owners nor any of their affiliates or subsidiaries will employ any person who, as an employee of the Managers or any sub-contractor, had participated in the management, superintendence, operation, accounting, crewing or chartering of the Vessel pursuant to this Agreement.

**15.  Auditing**
The Managers shall at all times maintain and keep true and correct accounts and shall make the same available for inspection and auditing by the Owners at such time as may be mutually agreed provided that no audit may be requested later than two (2) years after the end of the Managers' fiscal year. On the termination, for whatever reasons, of this Agreement, the Managers shall release to the Owners, if so requested, the originals where possible, or otherwise certified copies, of all such accounts and all documents specifically relating to the Vessel and her operation.

**16.  Inspection of Vessel**
The Owners shall have the right at any time after giving reasonable notice to the Managers to inspect the Vessel for any reason they consider necessary.

**17.  Compliance with Laws and Regulations**
In relation to the Vessel, the Managers will not do or permit to be done anything which might cause any breach or infringement of the laws and regulations of the Vessel's flag, or of the places where she trades.

**18.  Duration of the Agreement**
This Agreement shall come into effect on the day and year stated in Box 5 and shall continue until the date stated in Box 19. Thereafter it shall continue until terminated by either party giving to the other notice in writing, in which event the Agreement shall terminate upon the expiration of a period of three months from the date upon which such notice was given.

**19.  Termination**
19.1  Owners' default
(i)        The Managers shall be entitled to terminate the Agreement with immediate effect by notice in writing if:
    (a)    Any monies payable by the Owners under this Agreement and/or by the Owners of any Associated Vessel, details of which are listed in Annex "D", shall not have been received in the Managers' nominated account within seven running days of receipt by the Owners of the Managers' written demand for payments, or
    (b)    The Vessel is repossessed or arrested by the Mortgagee, or
    (c)    at any time the Owners should take or omit to take any action or steps that prejudice or are likely to prejudice the Vessel's Safety Management Certificate ("SMC") or the Managers' Document of Compliance ("DOC").
(ii)   If the Owners:
    (a)    Fail to meet their obligations under sub-clauses 5.2 and 6.3 of this Agreement for any reason within their control, or
    (b)    proceed with the employment of or continue to employ the Vessel in the carriage of contraband, blockade running, or in an unlawful trade, or on a voyage which in the reasonable opinion of the Managers is unduly hazardous or improper, or
    (c)    Materially breach their obligations under this Agreement.
The Managers may give notice to the Owners requiring them to remedy the situation. In the event that the Owners fail to remedy the situation to the satisfaction of the Managers, within seven running days, the Managers shall be entitled to terminate the Agreement with immediate effect by notice in writing.

19.2  Managers' default
If the Managers fail to meet their obligations under Clauses 3 and 4 of this Agreement for any reason within the control of the Managers, the Owners may give notice to the Managers of the default, requiring them to remedy it as soon as practicably possible. In the event that the Managers fail to remedy it within a reasonable time to the satisfaction of the Owners, the Owners shall be entitled

VM

# PART II
## Ship Management Agreement

to terminate the Agreement with immediate effect by notice in writing. 565 566

**19.3  Extraordinary Termination** 567

This Agreement shall be deemed to be terminated in the case of the sale of the Vessel or if the Vessel becomes a total loss or is declared as a constructive compromise or arranged total loss or is requisitioned. 568 569 570 571

19.4  For the purpose of sub-clause 19.3 hereof: 572

(i)   the date upon which the Vessel is to be treated as having been sold or otherwise disposed of shall be the date on which the Owners cease to be registered as Owners of the Vessel; 573 574 575 576

(ii)  the Vessel shall not be deemed to be lost unless either she has become an actual total loss or agreement has been reached with her underwriters in respect of her constructive, compromised or arranged total loss or if such agreement with her underwriters is not reached it is adjudged by a competent tribunal that a constructive loss of the Vessel has occurred. 577 578 579 580 581 582 583

19.5  This Agreement shall terminate forthwith in the event of an order being made or resolution passed for the winding up, dissolution, liquidation or bankruptcy of either party (otherwise than for the purpose of reconstruction or amalgamation) or if a receiver is pointed, or if it suspends payment, ceases to carry on business or makes any special arrangement or composition with its creditors. 584 585 586 587 588 589

19.6  The termination of this Agreement shall be without prejudice to all rights accrued between the parties prior to the date of termination. 590 591 592

19.7  Following any event terminating this Agreement, within 30 days, the Managers will provide a statement detailing the amounts owed to/by the Managers by/to the Owners including all unpaid fees and commissions for Management Services. This statement will also include cost estimates of all items purchased or expensed, their transportation expenses as well as any Severance Costs and crew repatriation expense. Such accounting statements to be settled by the party owing monies within 30 days of receipt. 593 594 595 596 597 598 599 600

**20.  Law and Arbitration** 601

This Agreement shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this Agreement shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provision of this Clause. 602 603 604 605 606 607

The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association (LMAA) Terms current at the time when the arbitration proceedings are commenced. 608 609 610

The reference shall be to three arbitrators. A party wishing to refer a dispute to arbitration shall appoint its arbitrator and send notice of such appointment in writing to the other party requiring the other party to appoint its own arbitrator within 14 calendar days of that notice and stating that it will appoint its arbitrator as sole arbitrator unless the other party appoints its own arbitrator and gives notice that it has done so within the 14 days specified. If the other party does not appoint its own arbitrator and give notice that it has done so within the 14 days specified, the party referring a dispute to arbitration may, without the requirement of any further prior notice to the other party, appoint its arbitrator as sole arbitrator and shall advise the other party accordingly. The award of sole arbitrator shall be binding on both parties as if he had been appointed by agreement. 611 612 613 614 615 616 617 618 619 620 621 622 623 624

Nothing herein shall prevent the parties agreeing in writing to vary these provisions to provide for the appointment of a sole arbitrator. 625 626

In cases where neither the claim nor any counterclaim exceeds the Sum of USD50,000 (or other such sum as the parties may agree) 627 628

The arbitration shall be conducted in accordance with the LMAA Small Claims Procedure current at the time when the arbitration proceedings are commenced. 629 630 631

**21.  Notices** 632

21.1  Any notice to be given by either party to the other party shall be in writing and may be sent by courier, fax, telex, registered, recorded or certified mail or by personal service. 633 634 635

21.2  The address of the Parties for Service of such communication shall be as stated in Boxes 21 and 22, respectively. 636 637 638

21.3  Notices are effective upon receipt, and if received within normal business hours at the place of the party so served. Otherwise upon the opening of the next business day at the place of the party to be served. 639 640 641 642

**Annexes:**

| | | | | |
|---|---|---|---|---|
| "A" (Details of Vessel) | YES | ✓ | NO | ☐ |
| "B" (Details of Crew) | YES | ✓ | NO | ☐ |
| "C" (Budget) | YES | ✓ | NO | ☐ |
| "D" (Associated Vessels) | YES | ✓ | NO | ☐ |
| "E" (Additional Clauses) | YES | ✓ | NO | ☐ |

VM

ANNEX "A" (DETAILS OF VESSEL OR VESSELS)

Date of Agreement:          JANUARY 19, 2005

Name of Vessel(s):          MT "ALMIRANTE BRION"  EX CORCOVADO  EX MINERVA HELEN

Particulars of Vessel(s):   VESSEL TYPE:  DOUBLE HULL OIL TANKER

                            IMO # 9003081
                            YEAR OF BUILT:  1990
                            CLASS:  NK

                            GROSS TONNAGE:  52,500
                            NET TONNAGE:    24,977
                            DEADWEIGHT:     95,874

                            LENGTH:  246.84 MTS.
                            BREADTH:  42.0 MTS.
                            DEPTH:  19.5 MTS.

ANNEX "B" (DETAILS OF CREW)

Date of Agreement:

JANUARY 19, 2005

Details of Crew:

| Numbers | Rank | Nationality |
|---|---|---|
| 1 | Master | Venezuelan |
| 1 | Chief Officer | Venezuelan |
| 1 | 2/Officer | Venezuelan |
| 2 | 3/Officer | Venezuelan |
| 1 | Chief Engineer | Venezuelan |
| 1 | 2/Engineer | Venezuelan |
| 1 | 3/Engineer | Venezuelan |
| 2 | 4/Engineer | Venezuelan |
| 1 | Electrical Officer | Venezuelan |
| 1 | Bosun | Venezuelan |
| 1 | Pumpman | Venezuelan |
| 1 | Engine Fitter | Venezuelan |
| 3 | Able Seamen | Venezuelan |
| 3 | Ordinary Seamen | Venezuelan |
| 3 | Oilers / Motormen | Venezuelan |
| 1 | Wiper | Venezuelan |
| 2 | Cook | Venezuelan |
| 1 | Mess man | Venezuelan |

- Total 27 crew on board. Plus additional and/or different ranks as the Owners may require or the Managers decide as circumstances dictate.

- Manning levels are subject to review based on efficiency and productivity observed.

- Manning budget is subject to change if in any event local Venezuelan regulations are modified.

VM

ANNEX "G" (REGULAR BUDGET & IRREGULAR BUDGET)

Date of Agreement:  JANUARY 19, 2005

Manager's Budget for the 2005 to be adjusted pro-rata upon commencement in 2005. Docking date to confirm.

CERTIFICATION

| | | |
|---|---|---|
| 665110 | SURVEYS | 35000 |
| 665120 | OIL CO APPROVAL | 30000 |
| 706170 | VESSEL REGISTRATION | 30000 |
| 665130 | OPA90ISM | 12800 |
| 665160 | ISPS | 10000 |
| 665140 | BUNKER ANALYSIS | 4200 |

SUB TOTAL                                    122000

REPAIRS

| | | |
|---|---|---|
| 665210 | RADIO | 5000 |
| 665215 | NAVIGATION EQUIPMENT | 7000 |
| 665220 | SOLAS | 11000 |
| 665230 | CARGO EQUIPMENT | 8000 |
| 665235 | DECK MACHINERY | 8000 |
| 665240 | MAIN ENGINE | 10000 |
| 665250 | AUX ENGINES | 4000 |
| 665260 | BOILERS | 7500 |
| 665270 | PUMPS | 7500 |
| 665275 | AUX MACHINERY | 0 |
| 665280 | ELECTRICAL | 6000 |
| 665285 | ACCOMMODATION | 3000 |
| 665290 | STRUCTURE | 20000 |
| 665295 | RIDING CREWS | 25000 |
| 665296 | SUPERVISION & TRAVEL | 15000 |

SUB TOTAL                                    137000

SPARES

| | | |
|---|---|---|
| 665310 | RADIO | 4000 |
| 665315 | NAVIGATION EQUIPMENT | 5000 |
| 665320 | SOLAS | 10000 |
| 665330 | CARGO EQUIPMENT | 13000 |
| 665335 | DECK MACHINERY | 15000 |
| 665340 | MAIN ENGINE | 30000 |
| 665350 | AUX ENGINES | 35000 |
| 665360 | BOILERS | 10000 |
| 665370 | PUMPS | 20000 |
| 665375 | AUX MACHINERY | 15000 |
| 665380 | ELECTRICAL | 4500 |
| 665385 | ACCOMMODATION | 4000 |
| 665390 | STRUCTURE | 10000 |
| 665395 | FREIGHT & FORWARDING | 40000 |
| 665396 | AGENCY FEES | 5000 |

VM

NM

| | | | |
|---|---|---|---|
| SUB TOTAL | | 220500 | |

**STORES**

| | | | |
|---|---|---|---|
| 635310 | LUB OIL & GREASE | 120000 | |
| 635320 | CHIEF OFFICER | 34000 | |
| 635325 | P.P.E. | 10000 | |
| 635330 | CHIEF ENGINEER | 36000 | |
| 635340 | CHIEF COOK | 8000 | |
| 635360 | CHARTS | 7900 | |
| 635380 | PAINT | 20000 | |
| 635390 | CHEMICALS | 12000 | |
| 635395 | GASES | 4000 | |
| | | | 131900 |

| | |
|---|---|
| SUB TOTAL | 251900 |

**MISCELLANEOUS**

| | | |
|---|---|---|
| 696070 | PMS SYSTEM / SOFTWARE SUPPORT | 38000 |

| | |
|---|---|
| SUB TOTAL | 38000 |
| COMMUNICATIONS | 30000 |
| SUB TOTAL | 30000 |

**MANAGEMENT EXPENSES**

| | |
|---|---|
| MANAGEMENT FEE | 165000 |
| STATIONARY | 2000 |
| SUB TOTAL | 167000 |
| GRAND TOTAL | 966400 |

| | |
|---|---|
| DAILY RUNNING COSTS (Technical) | 2648 |

| | |
|---|---|
| P&I INSURANCE | 149,934 |
| H&M INSURANCE | 117,713 |
| COFRs | 20000 |
| FD&D | 5000 |
| WAR | 11,500 |
| SUB TOTAL | 304147 |
| CREW | 995,144 |

**MICELLANEOUS**

| | |
|---|---|
| BANK CHARGES | 3000 |
| EXCH. VARIANCE | 2500 |
| SUB TOTAL | 5500 |

VM
NM

TOTAL                                    2271191

DAILY RUNNING COSTS (Total)              6222

OFF HIRE
MOBILIZATION DD/IWS          0
DD/IWS                       0
OFF SERVICE                  4
TOTAL                        4

ANNEX "D" (ASSOCIATED VESSELS) TO

NOTE: PARTIES SHOULD BE AWARE THAT BY COMPLETING THIS ANNEX "D" THEY WILL BE SUBJECT TO THE PROVISIONS OF SUB-CLAUSE 19.1(I)(a) OF THIS AGREEMENT.

Date of Agreement:

JANUARY 19, 2005

Details of Associated Vessel:

GENERAL ZAMORA
BAHIA DE POZUELOS
ALLORO

## ANNEX "E" (ADDITIONAL CLAUSES)

**3.1 Crew Management**

The clause starting 'The Manager shall be subrogated..' on lines 83 -- 86 to be deleted.

**3.2 Technical Management**

Insert (vi) after (v) at line 109. Quote: (vi) as and when required by the Owners, the Managers will request a vetting inspection (s) from any specified oil major. Unquote

**3.5 Accounting Services**

Insert at end line 161. Quote: Such records and accounts shall be reflected in a separate set of accounts in the name of the Owners and/or the Vessel. Unquote

Insert new sub-clause (iii) at line 162. Quote: (iii) The Managers shall provide the Owners with a copy of all invoices, vouchers and other documentation and information relating to the said accounting records as may be reasonably required, within 45 days of the reported month-end. Unquote.

**8. Management Fee**

Insert in sub-clause 8.3 at line 292 after "traveling expenses" Quote: ,attendance fees, insurance claim handling costs Unquote

In line 300, delete the word "three" and replace with "two" so as to read "two calendar months".

**9. Budgets and Management of Funds**

Insert in line 331 after "require.", the following new wording. Quote: The Manager will submit additional budgets for irregular and extraordinary items as and when required in addition to annual budget.

The existing sentence in line 331 after "require" to be changed to read Quote The budget for the first 12 month period as presented in Annex 'C' hereto will be adjusted by mutual agreement to cover the balance of the calendar year from the commencement date. Unquote.

9.2 In line 336 delete "one month" and replace with "fifteen days".

9.3 Insert at end line 352. Quote: The Managers will open an account in the Vessel's name at Fortis Bank BV Rotterdam (or any other bank as maybe advised from time to time by the Managers). The Managers will not use any funds deposited into this account by the Owners other than to pay for expenses and fees incurred in line with this Ship Management Agreement. Unquote.

End of Additional Clauses

*VM*